IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cv-00364

MARK WALKER,

      Plaintiff,

vs.

PARK COUNTY SHERIFF'S OFFICE, DEPUTY LEIGH COCHRAN, DUMB FRIENDS LEAGUE HARMONY EQUINE CENTER, and BOBBI PRIESTLEY,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Mark Walker, by his attorney Robert M. Liechty of ROBERT M LIECHTY PC, brings his complaint as follows:

1.    Plaintiff Mark Walker resides in Park County, outside of Hartsel, Colorado. The Park County Sheriff's office is located in Park County and Deputy Leigh Cochran is an officer in the Sheriff's office. The Dumb Friends League Harmony Equine Center is located in Franktown, Colorado. Bobbi Priestley is the Manager of Field Services for Harmony Equine Center. Ms. Priestley is also a peace officer under Colorado law and an employee of the Colorado Department of Agriculture.

2.    Plaintiff has brought a claim under 42 USC §1983 for violation of his fourth amendment rights to be free from unreasonable seizures. He claims that all defendants acted in a conspiracy to violate his rights and, therefore, this court has jurisdiction over the matter.

3.      On August 20, 2019, plaintiff sent a notice of intent to sue letter, pursuant to CRS §24-10-109, to the Park County Attorney and to the Colorado Attorney General. Plaintiff has received no response.

4.      Mr. Walker had a herd of 78 horses split among three locations near Hartsel, Colorado.  He had 48 horses at the Badger Basin Ranch, 10 brood mares and 10 two-year-olds at the Hartsel Spring Ranch, and 10 foals at the ranch of Lynn Durbin. Most of the horses were his, but approximately 10-15 belonged to other people who left them in the care of Mr. Walker.

5.      Mr. Walker had been successfully breeding horses for 40+ years to produce strong, hearty, tough, mountain horses resistant to the colder winters in the high country.  As an outfitter his horses were integral to his business, doing horseback rides, camping expeditions, hunting expeditions, and he often leased his horses to other outfitters for similar activities in the high country.

6.      Frank Wolthuis owns Badger Basin Ranch, which contains 4,200 acres.  It is roughly the shape of a triangle, with the two legs being some 3 miles long each. These legs are bordered by Highway 9 and Highway 24.  Consequently, unlike other ranches in the area, the Badger Basin Ranch has a high exposure to the public.

7.      January, 2019, was a cruel weather month in Park County.  The snowfall exceeded 30 inches in places and the temperature dropped to 40° below zero for a two-week period.  As a result, Mr. Walker, and two ranch hands, had been giving extra care to the herd at Badger Basin since December, 2018.  The horses at the Hartsel Spring Ranch and at the ranch of Lynn Durbin required less effort to bring them feed and

water.   Mr. Walker provided Lynn Durbin and a resident in Harstsel Springs Ranch feed

which they provided daily to these horses.

8.      In a typical winter, it would require three hours per day for Mr. Walker and

his two ranch hands to feed the herd.  By mid-January, 2019, it required at least six

hours per day to feed the herd because of the amount of snow and the low

temperatures.  The extreme weather required regular plowing in order to bring feed to

the animals.   Mr. Walker began plowing lanes through the snow in the pasture

beginning in early January.

9.      Twice in December-January Mr. Walker had brought part of the herd to

the ranch headquarters, but the horses would on their own wander back to the remoter

areas of the ranch.

10.      On January 28, 2019, Deputy Leigh Cochran received a report that there

were thin horses on the Badger Basin Ranch.  Deputy Cochran was the animal control

officer for the Sheriff's office and had been so for four years.  She went to the ranch, but

did not locate any horses.  She contacted Mr. Walker and told him that she had

received a report of nine thin horses near the highway.  He said he would check on

them and bring them to the ranch buildings.

11.      On January 29, 2019, Deputy Mercier received a call from a Marcy

Sturuna that Ms. Sturuna saw a dead gray and white horse on the Badger Basin Ranch.

Deputy Cochran found the dead horse and called Mr. Walker.  He identified the horse

as Ringo who was 32 years old and could not take the cold.  Deputy Cochran told him

that a few of the horses were thin and that she was receiving complaints.  Mr. Walker

stated he was already feeding the horses and was bringing them closer to the ranch headquarters to facilitate bringing the horses feed.

12.     On January 29, Deputy Cochran posted a Notice of Warning that Mr. Walker was to provide food, water, and veterinary care for the horses.  In response, he continued to provide proper care for the animals.

13.     On January 30, Deputy Cochran saw Mr. Walker moving the horses by foot.

14.     On February 4, Deputy Cochran again went to the ranch.  She saw that Mr. Walker was feeding in a pasture adjacent to Highway 9 and that there were cattle, buffalo, and horses in this pasture, which is several hundred acres.   Mr. Walker was feeding, milo round bales, grass hay, alfalfa hay and high protein range cake.    Mr. Walker was able over the next few days to separate the cattle, buffalo and horses in to different pastures so they could be fed independently.

15.     On February 14, Deputy Cochran contacted Agent Bobbi Priestley with the Colorado Humane Society.  Ms. Priestley had previously held the position that Deputy Cochran now held in the Park County Sheriff's office.  Ms. Priestley came to Badger Basin where she saw that Mr. Walker was moving horses with two horse trailers.

16.     On February 14, Deputy Cochran gave Mr. Walker a second Notice of Warning stating that he was to provide food and water for the herd and to provide vet care for a horse named Starburst.  Although the notice stated that he was to correct the herd's condition by February 18, Deputy Cochran told Mr. Walker that he had 30 days to improve the condition of the herd.

17.     On February 15, Agent Priestley and Deputy Cochran again went to the ranch.  Mr. Walker moved seven skinny horses to a pen near the ranch buildings.  He and Deputy Cochran went out into the fields on a tractor.  Deputy Cochran identified four horses in the fields that needed to be brought to the pens, which Mr. Walker did.

18.     Later on February 15, Mr. Walker's vet, Leslie Harrison, inspected Starburst, who was in the "skinny pen" with six other skinny horses.  Dr. Harrison had been Mr. Walker's vet for over 15 years.  The vet told Mr. Walker to keep doing what he was doing with Starburst and made no comment regarding the other horses in the "skinny pen."

19.     On February 16, Deputy Cochran returned to the ranch and suggested that Mr. Walker feed the horses grass hay as opposed to the oat hay he was feeding them.  She contacted veterinarian Sadie Maybach to assess an older horse (Dakota, over 30 yrs old) that had fallen down.  Ms. Maybach rated the horse as a 1 on the Henneke scoring system, which is the lowest rating out of nine points.  She recommended a feeding plan of alfalfa hay, grass hay, or pellets.  Mr. Walker agreed with this feeding plan.

20.     On February 18, Deputy Cochran went to check on the horses and feed.  She noted that all the horses were eating better grass hay and all had water.  She noted that the older horse, Dakota, who had previously gone down, was not doing well.  Mr. Walker did not think she would survive.

21.     On February 19, 2019, Agent Priestley told Deputy Cochran that Agent Priestley believed that Mr. Walker was not adequately caring for the animals and that

their survival was not likely if left in Mr. Walker's care.  Ms. Priestley said it would be difficult for any healthy animal to survive in the harsh conditions during that winter in Hartsel.

22.     Deputy Cochran agreed with Agent Priestley and drafted an affidavit to support a warrant to seize the horses.

23.     In all, six horses died, four in Hartsel and two after their seizure:

- Ringo, 32 years old.  He was not of Mr. Walker's heartier breed.
- Dakota, over 30 years old.  She was the older horse in ¶¶ 19 & 20.
- A grulla,[1] 2 ½ years old.  She was not skinny and died of colic.
- A palomino, 25 years old.  It died far out in the pasture beyond where the tractor could go.
- A grulla weanling, 10 months old.  It died of infection after its seizure.
- Pokey, 32 years old.  It was put down in April, after its seizure.

24.     On February 21, 2019, defendants came to the Badger Basin Ranch with 11 trailers and 21 people.  They seized 48 horses.  At that time, Deputy Cochran was asked why they were seizing the horses and she said that it was out of her hands, indicating that the decision to seize the horses was Ms. Priestley's decision.

25.     On February 25 and February 27, defendants returned to seize an additional 10 horses from Hartsel Springs Ranch and from the ranch of Lynn Durbin.  In total, defendants seized 58 of the 78 horses.

26.     Deputy Cochran signed all the search warrants used to seize the 58 horses.  Agent Priestley decided to execute the warrants.  The 58 horses were seized and taken to Priestley's employer, the Colorado Humane Society, Harmony Equine

---

[1] A grulla horse is not a breed.  Rather, grulla is a type of coloring, marked by the horse's mane and legs being of a darker color than the body.

Center.  The business of the Harmony Equine Center is to provide the horses for adoption by private owners.  Thus, the seizures promoted its business.

27.     Mr. Walker was charged with eight counts of cruelty to animals under CRS §18-9-202.  He attempted to retrieve his horses after they were seized but, in order to do so, he had to put up a bond of $250 per month for each horse to pay for its care.  This amounted to approximately $15,000 per month and he did not have that money to pay for the bond.  Thus, he had no choice but to surrender the horses.

28.     Deputy Cochran and Ms. Priestley intentionally took more horses than was merited, so that Mr. Walker could not bond out the animals and Harmony could keep them as part of its business model.  Given Ms. Priestley's belief that it would be difficult for any healthy animal to survive in the harsh conditions during that winter, there was no reason to believe that Mr. Walker was cruel to any horse.

29.     Three individual owners of the seized horses, which horses did not belong to Mr. Walker himself, tried to retrieve their horses but were denied because they did not have a brand-inspector certificate showing ownership.  Defendants knew that the owners did not have the technical certificates necessary to show ownership under the statute and that the requests to have the horses returned would be denied.

30.     Mr. Walker went to trial on the above charges and was found not guilty on all charges on December 6, 2019.

31.     Shortly after the seizure, the talk was widespread in Fairplay and Hartsel that Mr. Walker was cruel to his animals and violated the law.  This greatly harmed his reputation because his business was handling animals.

32.     A few days after the not guilty verdict, his criminal attorney called counsel for the Harmony Equine Center and asked for a return of the six horses still in Harmony's possession.  The Harmony attorney said that one of the six horses had been adopted out the day before and that the center would not return the remaining five horses even though Mr. Walker was not guilty of cruelty to animals.

33.     Agent Priestley and the Harmony Equine Center conspired with the County and Deputy Cochran to seize the horses.  Brand Inspector Colby stated that Ms. Priestley asked him in March, 2019, how she could seize Mr. Walker's cattle.  Mr. Colby told her that she could not seize the cattle.

34.     In 2018, Harmony and Ms. Priestley had orchestrated a similar seizure of horses from Penny Gingrich.  Upon information and belief, an agent from Harmony came to Ms. Gingrich's ranch in the summer of 2018 to determine which horses Harmony would seize that following winter.  In that following winter, Harmony unreasonably seized 65 horses from Ms. Gingrich.  Ms. Gingrich was charged with 65 counts of cruelty and was found not guilty on all counts.

35.     Thus, the scheme used to deprive Mr. Walker has been employed before by Ms. Priestley and Harmony.

### First Claim, Fourth Amendment unreasonable seizure (all defendants)

36.     Defendants acted under the color of law.  Defendant Park County Sheriff's Office and Deputy Cochran are the law enforcement for Park County.  Agent Priestley used to work for Park County as its animal control officer.  She conspired with the county and with Deputy Cochran to unreasonably seize the horses.

37.     Agent Priestley is also a law enforcement officer and an officer of the Department of Agriculture.  She acted as the agent for Harmony in unreasonably seizing the horses for Harmony's purposes

38.     As Agent Priestley stated in ¶ 21 above, it would be difficult for any healthy animal to survive in the harsh conditions during the 2019 winter in Hartsel.  Therefore, it was unreasonable to seize the horses where the cruelty to the animals, if any existed, was caused by an act of God, not by Mr. Walker.

39.     The Sheriff's office is liable for this seizure because the seizure was done pursuant to the official custom or policy of the Sheriff's office.  The Sheriff left this official action to the sole decision of Ms. Priestley or Deputy Cochran or both.  Harmony is liable for the seizure because it conspired through Ms. Priestley to unreasonably seize the horses, as it did before with Ms. Gingrich's horses.

40.     Because of this unreasonable seizure, Mr. Walker lost his property and the property of others who entrusted the care of their horses to Mr. Walker.  Because he lost the horses, he lost his business as an outfitter.  He incurred emotional pain-and-suffering because of the loss of his horses and because of the stress of the prosecution against him.

41.     The seizure by Harmony and Ms. Priestley was done with a reckless indifference to the rights of Mr. Walker, subjecting these two defendants to punitive damages.

42.     Under 42 USC §1988, plaintiff may recover his reasonable attorney's fees.

### *Second Claim, civil theft (Priestley and Harmony)*

43.     Ms. Priestley and Harmony knowingly obtained control over the seized horses and did so without authorization.

44.     These defendants did so with the specific intent to permanently deprive the owners of the horses the benefit of their property.

45.     This violates the civil theft statute, CRS §18-4-405.  Under this statute, Mr. Walker is entitled to recover three times the amount of the actual damages sustained by him, including the loss of the horses and the loss of his business, and may also recover costs and reasonable attorney fees.

### *Third Claim, Outrageous Conduct (Priestley)*

46.     Ms. Priestley engaged in extreme and outrageous conduct by deciding to seize all the horses in spite of the fact that the horses' condition was caused by an act of God.  This was outrageous in light of the fact that Deputy Cochran was overheard as saying that Mr. Walker had an additional 30 days to care for his horses.

47.     Ms. Priestley seized the horses recklessly or with the intent of causing Mr. Walker severe emotional distress.

48.     Her conduct caused Mr. Walker severe emotional distress by subjecting him to ridicule.  His business was to care for his horses, and the horses of others, and this business was ruined.  In addition, his business as an outfitter was destroyed causing him further emotional distress.

### Fourth Claim, defamation (Priestley and Cochran)

49.     Both Deputy Cochran and Ms. Priestley caused to be published that Mr. Walker was cruel to his horses and to the horses left in his care.  This was false.

50.     This was the talk of the town in Hartsel and in Fairplay and greatly diminished Mr. Walker's reputation.

WHEREFORE, plaintiff Mark Walker respectfully requests that this court enter judgment in his favor and for interest, costs, attorney's fees, and such other relief as this court may deem proper.

Plaintiff requests trial to a jury.

Respectfully submitted this February 12, 2020.


By:     s/     *Robert M. Liechty*
                Robert M. Liechty
                ROBERT M LIECHTY PC
                1800 Gaylord St.
                Denver, Colorado 80206
                Tel: (303) 861-5300
                Fax: (303) 861-2746
                Email:  rliechty@crossliechty.com
                ATTORNEY FOR PLAINTIFF

Address of Plaintiff:
33145 S. Hwy 9
PO Box 277
Hartsel, CO 80449