IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00364-PAB-NYW

MARK WALKER,

      Plaintiff,

v.

PARK COUNTY SHERIFF'S OFFICE,
DEPUTY LEIGH COCHRAN,
DUMB FRIENDS LEAGUE HARMONY EQUINE CENTER, and
BOBBI PRIESTLEY,

      Defendants.

---

**ORDER**

---

This matter is before the Court on Dumb Friend League Harmony Equine Center and Bobbi Priestly's Motion to Dismiss [Docket No. 32] and Park County Sheriff's Office and Deputy Leigh Cochran's Motion to Dismiss [Docket No. 33]. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

## I. BACKGROUND[1]

Plaintiff is a rancher who, prior to the events giving rise to this suit, had a total of 78 horses at three ranches in Hartsel, Colorado. *See* Docket No. 18 at 2, ¶ 4. Plaintiff has been breeding and raising horses for over 40 years. *See id.*, ¶ 5. In January, 2019, the winter in Hartsel was difficult; snowfall exceeded 30 inches and temperatures reached 40 degrees below zero for a two week period. *See id.*, ¶ 7. The harshness of

---

[1] The Court assumes that the allegations in plaintiff's complaint are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

winter required extra work for plaintiff.  In a normal winter, it would take plaintiff and his two ranch hands three hours to feed the herd, but, in January 2019, it took at least six hours per day.  *Id.* at 3, ¶ 8.  Plaintiff had to plow through the snow to reach his horses. *See id.*

On January 28, 2019, defendant Deputy Leigh Cochran, the animal control officer for the Park County Sheriff's Office, received complaints regarding thin horses at one of plaintiff's ranches.  *See id.*, ¶ 10.  Deputy Cochran went to plaintiff's ranch, but could not find any horses, so she contacted plaintiff to inform him of the complaints. *See id.*  On January 29, 2019, another deputy received a call regarding a dead horse on the same ranch; Deputy Cochran went to the ranch and found the dead horse.  *See id.*, ¶ 11.  Deputy Cochran again told plaintiff about the complaints regarding thin horses on his ranch.  *Id.*  That same day, Deputy Cochran "posted a Notice of Warning that Mr. Walker has to provide food, water, and veterinary case for the horses."  *See id.* at 4, ¶ 12.  On February 4, Deputy Cochran went back to plaintiff's ranch, where she saw that plaintiff was feeding his horses, buffalo, and cattle in the same pasture; over the next few days plaintiff separated the animals "so they could be fed independently."  *Id.*, ¶ 14.

On February 14, Deputy Cochran contacted defendant Bobbi Priestly, the manager of Field Services for defendant Dumb Friends League, Harmony Equine Center ("Harmony") and a peace officer with the Colorado Department of Agriculture. *See id.* at 1, 4 ¶¶ 1, 15. Agent Priestly went to plaintiff's ranch, where she saw plaintiff moving his horses.  *Id.*  Deputy Cochran issued a second notice to plaintiff on February 14, alerting him that he had to provide food, water, and veterinary care to his herd.  *See*

*id.* Although the notice stated that plaintiff had until February 18 to improve the condition of his herd, Deputy Cochran told plaintiff that he had 30 days. *id.* at 16. On February 15, Deputy Cochran and Agent Priestly returned to plaintiff's ranch. *See id.* at 5, ¶ 17. Plaintiff moved seven skinny horses closer to the ranch buildings and, after a drive through plaintiff's fields, Deputy Cochran identified four additional horses that should "be brought to the pens." *Id.* Later that day, plaintiff's veterinarian inspected one horse in the "skinny pen," and told plaintiff to "keep doing what he was doing"; the veterinarian said nothing regarding the other horses in that pen. *Id.*, ¶ 18.

On February 16, Deputy Cochran returned to the ranch and suggested an alternate feeding plan for the horses. *See id.*, ¶ 19. Another veterinarian also came to assess one of plaintiff's horses, "rated the horse as a 1 on the Henneke scoring system, which is the lowest rating out of nine points," and recommended a particular feeding plan, to which plaintiff agreed. *Id.* Deputy Cochran returned on February 18 and "noted that all the horses were eating better grass hay and all had water." *Id.*, ¶ 20. One horse, however, was not doing well; plaintiff "did not think she would survive." *Id.* The next day, Agent Priestly informed Deputy Cochran that she did not think that plaintiff had been properly caring for his animals and "their survival was not likely" if left in plaintiff's care. *Id.* at 5-6, ¶ 21. Deputy Cochran agreed and, as a result, "drafted an affidavit to support a warrant to seize the horses." *Id.* at 6, ¶ 22. Deputy Cochran "signed all the search warrants used" and "Agent Priestly decided to execute the warrants." *Id.* at 7, ¶ 26. On February 21, 2019, "defendants" went to plaintiff's ranch with "11 trailers and 21 people" and seized 48 horses. *Id.* at 6, ¶ 24. Defendants seized an additional 10 horses on February 25 and 27, for a total of 58 horses. *Id.*,

¶ 25.  The horses were brought to Harmony.[2]  *See id.* at 8, ¶ 26.

Plaintiff attempted to retrieve his horses.  *See id.* at 8, ¶ 30.  To do so, however, "he had to put up a bond of $250 per month for each horse to pay for its care."  *Id.*  This meant he had to pay an upfront bond of $15,450 and that same amount every month thereafter.  *Id.*  Plaintiff could not afford the bond.  *Id.*

The district attorney for Park County charged plaintiff with eight counts of animal cruelty, for which plaintiff was found not guilty on December 6, 2019.  *Id.*, ¶ 32.  After he was found not guilty, plaintiff asked Harmony to return any horses remaining in its possession.  *Id.* at 8-9, ¶ 34.  Harmony "would not return the remaining five horses."[3]  *Id.*

Plaintiff filed suit on February 12, 2020.  *See* Docket No. 1.  In his amended complaint, plaintiff brings five claims: (1) unconstitutional seizure "in violation of the Fourth Amendment or the [Fourteenth] Amendment, or both" against all defendants; (2) malicious prosecution in violation of the Fourth Amendment against all defendants; (3) state law civil theft against Agent Priestly and Deputy Cochran; (4) state law outrageous conduct against Agent Priestly; and (5) state law defamation against Agent Priestly.  *See* Docket No. 18 at 9-13.  *See* Docket No. 18 at 6.  Both the Law Enforcement defendants and the Harmony defendants have filed motions to dismiss, *see* Docket Nos. 32-33, arguing, inter alia, that they are entitled to qualified immunity and, even if

---

[2] Plaintiff lists the Dumb Friend Friends League as a defendant in this case, but his allegations often refer to the Humane Society.  While both are animal organizations, they are different.  Nevertheless, given that the Dumb Friends League was properly served and has filed a motion to dismiss, the Court assumes that plaintiff meant the Dumb Friends League and not the Humane Society in his allegations.

[3] Plaintiff believes the other horses were adopted.  *Id.*

4

they were not, plaintiff has failed to state a claim. *See id.*

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with his allegations. *Cory v. Allstate Insurance*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the Court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to

dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

Before addressing the merits of defendants' motions to dismiss, the Court first notes that plaintiff has conceded that several claims should be dismissed.  First, plaintiff "concurs that the § 1983 malicious prosecution claim against Harmony may be dismissed."  *See* Docket No. 40 at 9.  Plaintiff also agrees to dismiss his municipal liability claims against the Park County Sheriff's Office without prejudice.  *See* Docket No. 41 at 11.  Accordingly, the Court will dismiss these claims.

### A.  Fourth Amendment Seizure

All defendants argue that plaintiff has failed to provide any non-conclusory allegations that they committed an unreasonable seizure and, even if plaintiff did, defendants are entitled to qualified immunity.  *See* Docket No. 32 at 3-6; Docket No. 33 at 3-6.

Qualified immunity "protects public employees from both liability and 'from the burdens of litigation' arising from their exercise of discretion."  *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quoting *Allstate Sweeping, LLC v. Black*, 705 F.3d 1261, 1266 (10th Cir. 2013)).  For a claim to survive a qualified immunity defense, a

6

plaintiff must "demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Id.* (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)). Courts are permitted to address the prongs of the qualified immunity analysis in any order that they wish and, should "think hard" before addressing both prongs of the analysis. *See Hunt v. Bd of Regents of Univ. of N.M.*, 792 F. App'x 595, 600-01 (10th Cir. 2019) (unpublished) (citing *Camreta v. Greene*, 563 U.S. 692, 707 (2011)); *see also Yeasin v. Durham*, 719 F. App'x 844, 850 (10th Cir. 2018) (unpublished) ("We can analyze either prong of the qualified immunity test first and can resolve the case solely on the clearly established prong." (citing *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013)).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Plaintiff can demonstrate that a right is clearly established "by identifying an on-point Supreme Court or published Tenth Circuit decision" establishing the unlawfulness of the defendant's actions. *Cummings*, 913 F.3d at 1239 (quoting *Quinn*, 780 F.3d at 1005). "Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the 'plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'" *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Trotter v. Regents*, 219 F.3d 1179, 1184 (10th Cir. 2000)).

"The general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *See Bailey v. United States*, 568 U.S. 186, 192 (2013). When a search or seizure is conducted pursuant to a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). However, issuance by a neutral magistrate does not necessarily end the inquiry. There are four situations where a seizure pursuant to a warrant will not provide an officer with qualified immunity: (1) "the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth"; (2) "[the] issuing magistrate wholly abandons her judicial role"; (3) "the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) "[the] warrant is so facially deficient that the executing officer could not reasonably believe it was valid." *See United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (citations, quotations, and alterations omitted).

The Court finds that plaintiff has failed to establish any of the four exceptions. Regarding the first, second, and third exceptions, none of plaintiff's allegations go to the falsity of the affidavit, the magistrate abandoning her judicial role, or the facial deficiency of the warrant. *See Danhauer*, 229 F.3d at 1007. Nor does plaintiff argue in either of his responses that these three exceptions apply.[4] *See* Docket Nos. 40, 41.

---

[4] Plaintiff in particular could not argue that the affidavit contained false or misleading information as the affidavit contains information and allegations nearly identical to those found in plaintiff's complaint.

Rather, plaintiff contends that he has alleged that there was no probable cause to seize his horses.  *See* Docket No. 40 at 5-6; Docket No. 41 at 5-6.  Thus, plaintiff's allegations and arguments go to the third exception, the indicia of probable cause to support the warrant itself.  *See Danhauer*, 229 F.3d at 1007.

Under the third exception, a suit against an officer will be allowed "when it is obvious that no reasonably competent officer would have concluded that a warrant should issue."  *See Millender*, 565 U.S. at 547.  However, "the threshold for establishing this exception is a high one."  *Id.*  "[I]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause-determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant."  *Id.* (citing *United States vs. Leon*, 468 U.S. 897, 921 (1983)).  "[W]here a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable."  *See id.* at 547-48 (citing *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986)).

In reviewing the affidavit, the Court finds that it is not so lacking in indicia of probable cause such that the issuance of the warrant was not within the range of professional competence.[5]  *See Millender*, 565 U.S. 547.  The affidavit states the

---

[5] Although this is a motion to dismiss, the Court may consider the warrants and the affidavits supporting so long as the are relied on in the complaint, "central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *See Rathbun v. Montoya*, 628 F. App'x 988, 990 n.2 (10th Cir. 2015) (unpublished) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (evaluating the warrants and affidavits in reviewing a Fourth Amendment seizure case).  Plaintiff does not object to the use of these documents or dispute their authenticity.  *See, e.g.*, Docket No. 40 at 2-3 n.3.

following relevant facts: (1) Deputy Cochran received reports regarding thin horses off Highway 24 and made contact with plaintiff regarding those reports; (2) another deputy received complaints regarding thin horses off the same highway; (3) a citizen reported that she saw a dead horse and that no one had been feeding the horses; (4) Deputy Cochran saw the dead horse herself, which was "mostly covered by snow"; (5) plaintiff told Deputy Cochran he had been unable to move his horses and that the dead horse probably died from the cold; (6) plaintiff informed Deputy Cochran "that he could not access the far back north side of the property due to large snow drifts"; (7) plaintiff had not separated his previously identified thin horses from the rest of his herd and plaintiff "could not point out specifically where the nine horses were"; (8) plaintiff told Deputy Cochran that "two, possibly four" horses had died; (9) plaintiff informed Deputy Cochran he did not want the horses at the ranch on two separate occasions, to which Deputy Cochran responded that the horses needed adequate care and feeding; (10) on a visit to plaintiff's ranch, Deputy Cochran and plaintiff rode a tractor through plaintiff's fields and found more thin horses; plaintiff was "shocked" that the horses were thin "because they were fine" the week prior; (11) on several occasions, starting on January 30, Deputy Cochran directed plaintiff to provide his thin horses different feed, but plaintiff did not feed "better hay" until February 18; however, at that point, he had still not fed the horses the feed directed by Deputy Cochran; (12) a veterinarian assessed one of plaintiff's horses on the Henneke body score and rated it a one, the lowest score, because "[t]he horse had little to no body fat that could be felt, with deep spaces between the ribs" and the "withers down the back to the hips and tail head were all protruding"; and (13) "there could be as many as ten" deceased horses and two were

missing from the originally identified nine.  *See* Docket No. 32-1 at 4-8.

The affidavit paints a clear picture: the weather was harsh and plaintiff's horses were in rough condition.  Plaintiff failed to provide his horses the appropriate feed until several weeks after he was directed, and at least two horses, and possibly ten, had died.  Plaintiff refused to bring his horses near the barn for proper shelter until he was given several warnings and directives.  This is not a situation where there is nothing to connect plaintiff to the horses, the care received, or the ranch.  *See United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) (finding an affidavit lacking where there was nothing connecting the plaintiff to criminal activity except his status as a felon).  "An affidavit establishes probable cause . . . if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place."  *See United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018).  The affidavit here describes plaintiff's property, plaintiff's horses, plaintiff's care of the horses, and plaintiff's dilatory response to caring for the horses.  This establishes a fair probability that plaintiff had not been adequately caring for his herd and is sufficient indicia of probability to support the magistrate's issuance of the warrant.

Plaintiff argues that there was no probable cause because: (1) Deputy Cochran and Agent Priestly should have known that the cold weather would eventually end; (2) a veterinarian at Harmony, post seizure, found the majority of his horses healthy; (3) there was a conspiracy to seize his horses so that Harmony could profit off their sale; and (4) he was acquitted of animal cruelty after a jury trial.  See Docket No. 40 at 4-7; Docket No. 41 at 5-8.  Regarding two and four, the post-hoc veterinary analysis and criminal acquittal, both of those occurred after the warrant was issued and, as a result,

are irrelevant to whether there was sufficient information in the affidavit to support the magistrate's issuance of the warrant.  The question is not whether, after the warrant was issued, other information came to light that might have contradicted the magistrate's determination, but whether, in the affidavit itself, there was sufficient information to support the magistrate's conclusion.  The Court already found that there was and, thus, any post-hoc information is irrelevant.

As to the alleged conspiracy, plaintiff provides no "supporting factual averments," *Cory*, 583 F.3d at 1244, for his allegation that there was some conspiracy to seize his horses.  Rather, he states in conclusory fashion that, because Harmony profits off the selling of seized horses, there must be some conspiracy.  *See* Docket No. 18 at 7, ¶ 26 ("The business of the Harmony Equine Center is to provide the horses for adoption by private owners.  Thus, the seizures promoted its business.").  However, without any supporting facts – when the conspiracy started, how it was enacted, who was part of it – plaintiff's allegation is merely conclusory, and the Court need not accept it.  *See Cory*, 583 F.3d at 1244.  Finally, the Court finds plaintiff's argument regarding the weather unpersuasive.  He alleges that any "cruelty to the animals . . . was caused by an act of God," and that Deputy Cochran and Agent Priestly should have known that the weather would warm up.  *See* Docket No. 18 at 5-6, 10, ¶¶ 21, 40.  However, even if the weather is out of plaintiff's control, plaintiff provides no support for argument that he is not required to respond to that weather and act accordingly such that there was no probable cause to issue the warrant.

Plaintiff, in response to the motions to dismiss, cursorily makes a second argument, that the warrants were overbroad.  *See* Docket No. 41 at 6 ("The instant

case is controlled by the line of cases in which an officer seizes items not listed in the warrant."). The Court notes that nowhere in plaintiff's complaint are there any allegations regarding the overbreadth or non-specificity of the warrants.[6] This alone is sufficient to dismiss plaintiff's claim. However, the Court finds that, even if plaintiff sufficiently presented this argument in his complaint, the warrants were not so overbroad as to be invalid.

Under the Fourth Amendment, warrants must (1) be supported by probable cause and (2) "particularly describe the place to be searched, and the persons or things to be seized." *See Rathbun v. Montoya*, 628 F. App'x 988, 993 (10th Cir. 2015) (unpublished) (citing U.S. Const. amend. IV). "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Pulliam*, 748 F.3d 967, 972 (10th Cir. 2014) (citation and quotations omitted). However, even if overbroad, a validly issued warrant will shield an officer from suit so long as it is not unreasonable for the officer to conclude that the warrant permitted the officers to seize the items that were seized. *See Rathbun*, 628 F. App'x at 994. An officer can "reasonably conclude[] that the warrant was sufficiently particular, even though it described the items to be seized in broad or generic terms, given the nature of the crime[] under investigation." *Id.*; *see also United States v. Cooper*, 654 F.3d 1104, 1127 (10th Cir. 2011) ("[W]hether a search warrant is sufficiently particular depends in part on the nature of the crimes being investigated.").

---

[6] Plaintiff does allege that extra horses were seized in violation of the Fourteenth Amendment, *see* Docket No. 18 at 10, ¶ 41, but that allegation does not reference the breadth of the warrant, just the breadth of the seizure and the corresponding bonding scheme.

The Court finds that it was not unreasonable for defendants to conclude that the warrant permitted them to seize the horses seized. First, as described above, the warrant was validly issued and supported by probable cause. Second, the context of the underlying criminal allegations was that plaintiff was failing to provide care for his herd. The warrant states that, "[b]ased on veterinary recommendations[,] equines will be seized and impounded." *See* Docket No. 32-2 at 2. This sufficiently describes that any horse recommended by a veterinarian to be seized is permitted to be seized. The seizing officers could reasonably conclude – indeed the warrant specifically states – that any horse recommended to be seized shall be seized, particularly given the context of the underlying criminal charges. Plaintiff does not argue, or allege, that the horses were not seized pursuant to veterinarian recommendation, rather, plaintiff "disputes which horses met this criteria." *See* Docket No. 41 at 6. But plaintiff disagreeing with a veterinarian's recommendation – in a response to a motion to dismiss and not his complaint – is not the appropriate constitutional test. The question is whether the validly issued warrant described the items to be seized with sufficient particularity such that a reasonable officer could conclude she was permitted to seize the items seized. *See Rathbun*, 628 F. App'x at 994. That was the situation here.

In sum, the Court finds that the horses were seized pursuant to a validly issued warrant, that the warrant described with appropriate particularity the horses to be seized, and that the warrant was supported by sufficient probable cause. As a result, Deputy Cochran and Agent Priestly are entitled to qualified immunity and plaintiff's

claim for unreasonable seizure is dismissed.[7]

### B.  Fourteenth Amendment Excessive Bond

Plaintiff asserts that defendants "seized [] extra horses knowing that this would make it impossible for [plaintiff] to bond out the horses and, therefore, Harmony could keep the additional horses."  *See* Docket No. 18 at 10, ¶ 41.  He alleges that "[t]his violates the 14th Amendment."  *Id.*  Defendants argue that plaintiff's allegations regarding the bonding scheme are conclusory and therefore should be dismissed.  *See* Docket No. 46 at 7; Docket No. 47 at 1.

First, the basis for plaintiff's claim that his Fourteenth Amendment rights were violated is unclear.  The only indication in his complaint is that the seizure of the "extra horses" violates the Fourteenth Amendment because they were seized in order to "make it impossible for [plaintiff] to bond out the horses."  *See* Docket No. 18 at 10, ¶ 41.  Therefore, the Court does not know if plaintiff is asserting an excessive fine claim based on the Eighth Amendment made applicable to the states by the Fourteenth Amendment, a procedural due process claim, or a substantive due process claim.  *See, e.g.*, *Campbell v. City of Spencer*, 682 F.3d 1278, 1285 (10th Cir. 2012) (excessive fine claim for seized horses).  Additionally, plaintiff's description of the bonding requirement is vague.  He provides no details, other than to say that "he had to put up a bond of $250 per month for each horse."  *See* Docket No. 18 at 8, ¶ 30.  Thus, there are no

_____

[7] Plaintiff also asserts a claim against Harmony for unreasonable seizure, but he provides no support for Harmony being a government official such that § 1983 is applicable to it or that it had anything to do with the preparation or execution of the warrant.  Plaintiff's only argument is that Harmony is "liable under §1983 because it was the beneficiary of the conspiracy to seize as many horses as possible to fulfill the business purposes of Harmony."  *See* Docket No. 40 at 8-9.  The Court already concluded that plaintiff's allegations regarding the conspiracy are conclusory.

allegations regarding whether this bonding requirement is a municipal ordinance, a state statute, or simply Harmony's boarding rules.

Second, as already described above, plaintiff has failed to assert any non-conclusory allegations regarding a bonding conspiracy or claim. Without any well-pled allegations, plaintiff cannot succeed against defendants.

Third, if the "bond" is simply Harmony's own rules and fee for taking care of boarded horses, plaintiff fails to explain how this private organization's boarding rules could supply the requisite state action to support a § 1983 claim, whether against Harmony or any of the defendants. In plaintiff's initial citation to *Robbins v. City of Greeley*, No. 15-cv-00683-RPM, 2016 WL 454999 (D. Colo. Feb. 5, 2016), plaintiff suggests that the "bond" requirement is just boarding fees, as he states "*[a]lthough the bond was pursuant to a city municipal code*, the principal in *Robbins* is the same as that herein." *See* Docket No. 40 at 7. This suggests that, unlike the municipal bond in *Robbins*, the bond here is Harmony's requirement. However, plaintiff later argues that the "abuse of this bonding statute was simply a cover used to steal the horses." *Id.* at 8. Given that plaintiff provides no support for the proposition that Harmony's private boarding fees could violate the Fourteenth Amendment and given plaintiff's statement that there is a "bonding statute," the Court assumes plaintiff is alleging that there is some ordinance or statute that requires the horses to be bonded at $250 per animal per month.

Fourth, even assuming as much, there are no allegations connecting defendants to the bonding requirement. If plaintiff is alleging that (1) the bonding scheme is excessive, (2) he was denied due process to challenge it, or (3) the scheme violates

16

substantive due process, plaintiff has failed to allege that any of the named defendants are responsible for the underlying bond structure or his denial of due process, substantive or procedural.  Rather, he only alleges that seizing extra horses would benefit Harmony.  *See* Docket No. 18 at 10, ¶ 41.  However, as already concluded, the horses were seized pursuant to a valid warrant.  Plaintiff's real issue, then, is with the underlying bonding scheme, which, to avoid having the horses adopted, forces him to pay to have them taken care of by Harmony, regardless of the number of horses seized.  But plaintiff has not cited a single case where the officers executing a warrant could be liable under §1983 for the bond requirements concerning the seized property or where a private organization responsible for holding the seized property at the direction of law enforcement could be liable under § 1983.  Nor has he provided any allegations or argument that defendants prevented plaintiff from exercising his procedural due process rights to challenge the scheme.

Plaintiff's citation to *Robbins* is unpersuasive.  There, the plaintiff had her dogs seized and was required to pay a bond to have the dogs held by the Humane Society during the pendency of her criminal case.  *See Robbins*, 2016 WL 454999, at *3.  The plaintiff could not pay the bond, her dogs were taken and either euthanized or adopted, and she was eventually acquitted in the underlying criminal trial.  *Id.* at *3-*4.  Moreover, she was not permitted to challenge the scheme until after she was acquitted, and the corresponding criminal motion to suppress the evidence that resulted in her dogs being taken was not ruled on until some time after the dogs had been taken from her.  *See id.* at *3-*5.  The court ruled that the procedural due process claim was "so egregious" that it was also a violation of substantive due process.  *See id.* at *5.  *Robbins* is different

17

from plaintiff's situation in three respects.  First, the plaintiff in *Robbins* sued the City of Greeley, whose municipal bond scheme caused plaintiff to lose her animals, not the officers who seized her dogs or the shelter who held them.  *See id.* at *1.  Second, the plaintiff was never permitted to challenge the bonding process and the motion to suppress was ruled on long after her dogs were taken.  *See id.* at *3-4.  By contrast, plaintiff here has not alleged that he was unable to challenge the bonding scheme or that he ever attempted to challenge it.   Finally, the dogs were seized illegally in *Robbins* as a result of a traffic stop that lacked probable cause.  *See id.* at *4.  Here, there was sufficient probable cause for the magistrate judge to issue the warrant.  In sum, *Robbins* dealt with a plaintiff who (1) sued the proper entity; (2) attempted to challenge the bonding scheme as unconstitutional; and (3) was deprived of challenging that scheme in a timely manner in order to prevent the adoption or euthanization of her animals.  Plaintiff, on the other hand, (1) sues the officers rather than the entity whose code requires the bond; (2) does not allege that he attempted to challenge the scheme at any point; and (3) had his horses seized pursuant to a valid warrant.  *Robbins* is thus inapposite.

In sum, plaintiff has failed to plead any non-conclusory allegations regarding a bonding conspiracy or scheme and has pled no allegations whatsoever that defendants are responsible for the underlying bonding requirement.  As a result, plaintiff's Fourteenth Amendment claim will be dismissed.

### C.  Malicious Prosecution

Defendants next seek to dismiss plaintiff's claim for malicious prosecution.  *See* Docket No. 32 at 7; Docket No. 33 at 6-8.  Defendants essentially argue that (1) there

was no constitutional violation and (2) they would be entitled to qualified immunity even if there was.  *See id.*; *see also* Docket No. 47 at 1.  As stated above, plaintiff agrees that the malicious prosecution claim against Harmony should be dismissed.  *See* Docket No. 40 at 9.  However, he contends that he has made sufficient allegations to support his claims against both Deputy Cochran and Agent Priestly.  *See id.*; *see also* Docket No. 41 at 9-10.

To state a claim for malicious prosecution, a plaintiff must adequately allege: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  *See Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citation omitted).  Even assuming that plaintiff can establish elements one, two, four, and five, Deputy Cochran and Agent Priestly would be protected by qualified immunity because the seizure of his horses and prosecution for animal cruelty occurred pursuant to a validly issued warrant.  As a result, qualified immunity protects both Deputy Cochran and Agent Priestly from suit for malicious prosecution under the Fourth Amendment.  *See Stonecipher v. Valles*, 759 F.3d 1134, 1147 (10th Cir. 2014) (applying the Fourth Amendment qualified immunity analysis to conclude an officer was shielded from liability for malicious prosecution); *see also Bailey v. Twomey*, 791 F. App'x 724, 733-35 (10th Cir. 2019) (unpublished) (same).[8]

---

[8] While *Bailey* questions whether "actual" or "arguable" probable cause is the relevant standard for qualified immunity for warrantless arrests, *see Bailey*, 791 F. App'x at 733-34, that discussion is irrelevant for the purposes of plaintiff's claim because plaintiff's horses were seized pursuant to a warrant.  The Fourth Amendment qualified immunity analysis applies to the probable cause prong of the malicious

### D.  Remaining State Law Claims

Plaintiff's remaining claims arise under state law.  *See* Docket No. 18 at 11-13.

Although the Court may exercise supplemental jurisdiction over state law claims if there

is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court

"may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district

court has dismissed all claims over which it has original jurisdiction."  The Tenth Circuit

has instructed that, "if federal claims are dismissed before trial, leaving only issues of

state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling

reasons to the contrary."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010)

(alterations, citations, and quotations omitted).  This rule is consistent with "[n]otions of

comity and federalism," which "demand that a state court try its own lawsuits."  *Id.* at

1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

Plaintiff does not argue that the Court should retain jurisdiction over his state law

claims if his federal claims are dismissed, and the Court does not find any compelling

reason to do so.  Accordingly, plaintiff's third, fourth, and fifth claims for relief will be

dismissed without prejudice.  *See Thompson v. City of Shawnee*, 464 F. App'x 720, 726

(10th Cir. 2012) (unpublished) (holding that, when declining to exercise supplemental

jurisdiction over state-law claims, the court "had discretion either to remand the claims

to the state court or to dismiss them"); *see also* Colo. Rev. Stat. § 13-80-111 (permitting

claims properly commenced within the statute of limitations to be re-filed if involuntarily

dismissed because of lack of jurisdiction); *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 598

_____

prosecution claim, although the analysis may change depending on whether the arrest
or seizure occurred with or without a warrant.

(2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

## IV.  CONCLUSION

For these reasons, it is

**ORDERED** that the Dumb Friend League Harmony Equine Center and Bobbi Priestly's Motion to Dismiss [Docket No. 32] is **GRANTED**.  It is further

**ORDERED** that the Park County Sheriff's Office and Deputy Leigh Cochran's Motion to Dismiss [Docket No. 33] is **GRANTED**.  It is further

**ORDERED** that plaintiff's claim against the Park County Sheriff's Office for an unconstitutional policy in violation of 42 U.S.C. § 1983 is **DISMISSED** without prejudice. It is further

**ORDERED** that the remainder of plaintiff's first and second claims against all defendants are **DISMISSED** with prejudice.  It is further

**ORDERED** that plaintiff's third, fourth, and fifth claims are **DISMISSED** without prejudice.  It is further

**ORDERED** that judgment shall enter for defendants and against plaintiff on all claims.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

DATED March 10, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge